# DECISIONS

# COURT OF APPEALS OF KENTUCKY.

## SEPTEMBER TERM, 1893.

CASE 1—PETITION EQUITY—OCTOBER 5.

## Schmidt v. Carter's Adm'r.

95    1
f102 438

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

UNRECORDED LIEN—ATTACHMENT.—A promissory note reciting that it was for money advanced "to help pay for a house and lot on Jefferson street, between Twenty-second and Twenty-third, and on which she (the payee) holds a lien until paid" was not sufficient to create a lien as against third parties, even with notice of the existence of the writing, it being manifest, not only from the note itself, but from the allegations of the pleadings, that the lien was to be created by some subsequent agreement. Therefore, the payee of the note having appeared in this proceeding, in which an attachment was levied upon the property referred to in the note, and asserted a lien, the court properly refused to give him priority over the attaching creditor.

W. O. HARRIS FOR APPELLANT.

1. The facts stated in the petition show a resulting trust independent of contract and not affected by the statute of frauds. (Trimble v. Puckett, 14 Ky. Law Rep., 209; s. c., 93 Ky., 218; Letcher v. Letcher, 4 J. J. M., 590; Bailey v. Welch, 4 B. M., 244; Faris v. Dunn, 7 Bush, 278; Montague v. Garnett, 3 Bush, 298; Fischli v. Dumaresly, 3 Mar., 23; Pugh v. Bell, 1 J. J. M., 403; Brothers v. Porter, 6 B. M., 106.)

2. A resulting trust is not affected by Gen. Stats., chap. 63, art. 1, sec. 19, unless it appears that the party furnishing the money assented to the borrower's taking the title absolutely without recognition of the trust. (Lindsay v. Williams, 2 Duv., 475; Faris v. Dunn, 7 Bush, 278; Aynesworth v. Haldeman, 2 Duv., 566.)

3. The written contract sued on is a valid equitable mortgage. (Jones on Mortgages, secs. 163 to 168; Courtney v. Scott, 6 Litt., 457; McGee v. Davis, 4 J. J. M., 70.)

4. Appellant's older equity has priority over a purchaser at an attachment sale with notice. (Baldwin v. Crow, 86 Ky., 679; Carroll's Code, sec. 212, note 8, and cases cited; Trimble v. Puckett, 14 Ky. Law Rep., 209; s. c. 93 Ky., 218.)

MUIR, HEYMAN & MUIR for appellees.

1. The instrument of June 3, 1889, creates no equity at all. It is only a promissory note, the latter part being merely descriptive of what the money was loaned for.

2. There was at most but an agreement to mortgage, and such an agreement can not take precedence over an attachment or execution without notice. The court should not widen the rule giving to an unrecorded mortgage priority over an attachment or execution lien where actual notice is given before a sale is had under the attachment or execution. (Gen. Stats., chap. 24, sec. 10; Barney & Smith M'f'g Co. v. Hart, Receiver, 8 Ky. Law Rep., 223.)

3. Even if a mortgage was intended, the description is so indefinite that parol testimony would be necessary to identify the property, and therefore the writing is within the statute of frauds. (Fowler v. Lewis, &c., 3 Mar., 445; Kay & Casey v. Curd, 6 B. M., 103; Fugate v. Hansford, 3 Litt., 262; Reed's Heirs v. Hornbach, 4 J. J. M., 377; Caskey v. Williams, 10 Ky. Law Rep., 877; Fox v. Courtney (Mo.), 20 S. W. Rep., 20; Holmes v. Evans, 48 Miss., 250; King, &c., v. Wood, 7 Mo., 389; Ives v. Armstrong, 5 R. I., 568; Clarke v. Chamberlin, 112 Mass., 21; Force v. Dutcher, 18 N. J. Eq., 402; Sheid v. Stamps, &c., 2 Sneed, 174; Gigos, &c., v. Cochran, &c., 54 Ind., 596.)

4. An intervening creditor can plead the statute of frauds as against a parol contract made before his lien attached and which is executed after his lien. (White v. O'Bannon, 86 Ky., 93; Jones v. Allan, 88 Ky., 384.)

5. Specific performance is discretionary with the court, and under the circumstances of this case ought not to be decreed.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The executor of James G. Carter, holding a claim against one Charles E. Landrum, originating from a partnership between Landrum and this testator, had an attachment issued and levied upon a lot of ground in Louisville that Landrum had conveyed to his wife. The conveyance was held to be fraudulent, and the lot ordered to be sold to satisfy the judgment for seven thousand dollars. After the attachment had been sustained and the sale ordered,

the appellant, Adelia Schmidt, claiming an equitable lien on the lot, instituted this action, alleging that her lien existed prior to the attachment lien, and asking that the property, or its proceeds, be first applied to the payment of her debt. The lien asserted by the appellant is claimed to exist by reason of the following obligation executed prior to the issual of the attachment:

"LOUISVILLE, KY., 3 June, 1889.

"One day after date I promise to pay to Adelia Schmidt or order two thousand dollars, being money advanced to me to help pay for a house and lot on Jefferson, between Twenty-second and Twenty-third streets, and on which she holds a lien until paid; interest to be paid monthly at the rate of six per annum.

"C. E. LANDRUM AND WIFE.

"LEONE LANDRUM."

In the petition of the appellant it is alleged that she loaned the money to be used in the purchase of the house and lot, and in consideration of the loan the defendants, Landrum and wife, agreed to give to the plaintiff a note due, as the paper above shows, and to secure the same by "mortgage on the property;" that the money was used in the purchase of the lot and a mortgage executed on the 22d of October, 1890, in accordance with the agreement, and recorded in the proper office. This mortgage was executed and recorded after the attachment had been issued and levied, and it is conceded that the mortgage created no lien or equity in favor of the appellant unless it is made to relate back to some agreement prior in date to the attachment by which the mortgage was to be executed. The only written evidence of any such agreement is the note evidencing the loan of the two thousand dol-

lars, in which it is recited that it is for "*money advanced to help pay for a house and lot on Jefferson, between Twenty-second and Twenty-third streets, and on which she holds a lien until paid.*" This verbiage in the note, it is claimed, creates an equity older in date than that created by the attachment, and under the familiar doctrine that in a contest between equities the elder equity must prevail, it is contended the proceeds of sale should be applied, first, to the payment of appellant's debt, the attachment lien being made to yield to the equitable mortgage lien. The statute provides: "No. deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration without notice thereof, or against creditors, until such deed shall be acknowledged or proved according to law and lodged for record." (Sec. 10, chap. 24, Gen. Stats.) It is insisted that before the equity of the appellee was enforced by a sale of the property it had notice of the agreement to mortgage, and therefore the statute referred to can not affect appellant's equity.

This court has adjudged in several cases that a mortgage not recorded, or a bond for title, has precedence over a lien created by an execution or attachment where actual notice has been given the creditor before the sale under the attachment or execution, the statute being construed as meaning (and, in fact, such is its language) that the purchaser holds unless he has actual notice of the outstanding equity; and there is no reason why a creditor is not affected with notice in the same manner that a purchaser would be. The deed or mortgage unrecorded is not good against a purchaser for value *without notice,* and the decisions giving priority to unrecorded liens seem

to follow the language of the statute and carry out the legislative intent. Valid liens, however, must actually exist, and not such liens as are established alone by parol proof, or where, upon the face of the instrument, it is manifest that the lien is to be created by some subsequent agreement. Courts of equity can not be too careful in guarding the rights of *bona fide* purchasers and creditors against hidden liens, or such as exist only in the contemplation of the parties, and it should be made to appear from the terms of the instrument itself that a lien has in fact been created. A mere recital in the face of a note for borrowed money that this is a lien on the land owned by the debtor, or that the debtor will thereafter execute a mortgage, creates no lien as against third parties; and to adopt a rule that would permit such liens to be enforced against others than the parties to it, would open the door wide to fraud and destroy entirely the salutary effect of our registration laws. The parties never intended the note to evidence any lien on the property as against creditors, because it is distinctly alleged that it was agreed the debtor should thereafter execute a mortgage to secure the note, and that was in fact done, but not until the attachment lien existed.

If the recital in any note given for borrowed money or for property, that the obligee holds a lien on the property of the obligor, or that the obligor is thereafter to create a lien to secure the paper, creates an equity as against all other liens after notice, our registration laws should be dispensed with, and the priority of liens determined by the antiquity of the paper evidencing the agreement to pay.

The case of Trimble v. Puckett, &c., 93 Ky., 218, is

relied on as authority for the appellant. In that case Brewer, the vendee of a tract of land, owed a part of the purchase money. Puckett advanced the money, and by an agreement with Brewer, the vendee, was substituted to the rights of the vendor. The lien had not been released, but was satisfied upon the payment by Puckett and the execution of a note by Brewer to Puckett, by which Puckett was made the vendor, and the land described as "*the farm I now live on.*" Of this note and its contents the creditor had actual notice, and although unrecorded, a lien was held to exist. There was enough in that note to show the entire agreement, and the substitution of Puckett to the rights of the vendor, or, rather, Puckett was made the vendor by the contract, and of this fact the creditor had notice. It was not an agreement to create a lien, but a lien arising from the discharge of a valid lien by Puckett, and of this the creditor was fully informed before he purchased. In the one case a lien was created, and in the case before us the parties only agreed te create a lien.

Hidden liens, or such as usually arise when the debtor's property is about to pass from him, even if containing all the requisites of a mortgage, are looked upon with suspicion, and courts of equity should be reluctant to ignore the claims of *bona fide* creditors, unless such liens are clearly established. In this case there is not even a description of the property, or any of the essential elements of a mortgage, and no court of equity should hold that this note is evidence of an agreement to mortgage, or that such an agreement, if established, would supersede the rights of *bona fide* purchasers and creditors.

Judgment affirmed.